**Clyde S. LOCKHART, Plaintiff,**

v.

**Donna E. SHALALA, Secretary of Health and Human Services, Defendant.**

No. 1:93CV00329.

United States District Court,
M.D. North Carolina,
Durham Division.

Aug. 11, 1994.

---

Plaintiff Lockhart, Durham, NC, pro se.

Assistant U.S. Attorney Benjamin H. White, Jr., Greensboro, NC, for defendant.

## MEMORANDUM OPINION

SHARP, United States Magistrate Judge.

Plaintiff Clyde S. Lockhart seeks judicial review, pursuant to 42 U.S.C. § 405(g) (1991), of the Secretary's final decision denying his claim for a period of disability, disability insurance benefits, and supplemental security income.[1] The Secretary's denial decision became final on March 25, 1993. In this action, the parties have filed cross-motions for judgment, and the administrative record has been certified to the court for review.

### The Claimant

Clyde S. Lockhart was born on November 30, 1947. He is a high school graduate who has worked at various jobs as a laborer or painter. In 1979, he stopped working regularly, but he resumed a series of jobs in 1985. In the administrative proceedings before the Secretary, the primary reason Lockhart ascribed for terminating his work was an accident he suffered on December 7, 1979. On that day, he was working as a painter and went to retrieve supplies from the car. He bent to pick up a suitcase he believed to contain heavy materials, but which was in fact empty. As he lifted the case, he felt something pop or snap in his back and he became partially paralyzed by pain. He was taken home, where he remained largely confined to his bed for several weeks.

1. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

### The Administrative Proceedings

Plaintiff originally filed applications for a period of disability, disability insurance benefits, and supplemental income benefits on August 6, 1982, alleging that he became unable to work on December 7, 1979. This application was denied initially and on reconsideration.

On July 11, 1989, Lockhart requested a review of his claim as a potential member of the class in *Hyatt v. Sullivan,* 899 F.2d 329 (4th Cir.1990). On September 19, 1989, Lockhart was notified that he was a member of the *Hyatt* class. Lockhart also filed new applications for a period of disability, disability insurance benefits and supplemental security income benefits on October 30, 1990, alleging that he had been disabled since May 24, 1990 due to stress, depression, and pain in his back, abdomen, and toe.

These claims were denied. Lockhart requested and was granted a hearing, which was held July 12, 1991. On August 5, 1991, the Administrative Law Judge ("ALJ") issued a hearing decision, finding that Plaintiff became disabled on May 24, 1990, and was entitled to disability insurance benefits and supplemental security income based on his 1990 applications. The ALJ also found that for the period from December 7, 1979 through December 31, 1984, there was no medical evidence of a severe impairment, nor was there evidence of an underlying physical or mental impairment that could reasonably be expected to cause pain as shown by medically acceptable objective evidence. Thus, the ALJ held that Lockhart was not disabled during that period and was not entitled to any benefits for that time.

The Appeals Council granted Plaintiff's request for review and vacated the unfavorable portion of the ALJ's decision on May 18, 1992. The Council remanded the case with instructions to resolve several issues, noting that it was unclear whether the ALJ found that the claimant had no medically determinable physical or mental impairment or whether the impairment existed but was not severe.

A second hearing before the ALJ was held on August 25, 1992. At this hearing, Plaintiff was represented by counsel. Plaintiff requested a closed period of disability from December 7, 1979 to June 1, 1985, when he returned to work. On September 19, 1992, the ALJ issued a hearing decision finding that Lockhart had not been disabled at any time during this period.

The Secretary's decision became final on March 25, 1993, when the Appeals Council found no basis for review of the decision of the ALJ. Lockhart thereupon filed this civil action for judicial review.

### The Scope of Judicial Review

■ . The scope of judicial review by this court of the Secretary's decision denying benefits is limited. *Frady v. Harris,* 646 F.2d 143, 144 (4th Cir.1981). The court must review the entire record to determine whether the Secretary has applied the correct legal standards and whether her findings are supported by substantial evidence. *Myers v. Califano,* 611 F.2d 980 (4th Cir.1980). Where this is so, the Secretary's findings are conclusive. The court may not "reweigh" conflicting evidence that is substantial in nature.

### Discussion

In this case, the court is asked to review two rulings by the Secretary. First, the court must determine whether substantial evidence supports the Secretary's conclusion that Lockhart is not entitled to disability insurance benefits for the period from December 7, 1979, the alleged onset date of his disability, until June 1, 1985, when he returned to work. Second, the court must review the Secretary's determination that Lockhart is not entitled to supplemental security income for the period between August 6, 1982, the date he applied for benefits, and June 1, 1985, when he returned to work.

### A. Disability Insurance Benefits

■ In order to receive disability insurance benefits for the period in question, Lockhart is required to show that he was disabled, as defined in the Social Security Act, by June 30, 1980, the expiration date of his insured status. In 1991, Plaintiff was diagnosed as suffering from a radiculopathy

between the L4 and L5 vertebrae, and his symptoms had clearly become severe. (Tr. 291.) On that basis, the ALJ awarded Lockhart disability insurance benefits for the period beginning May 24, 1990, and continuing at least through the date of his last decision. In reviewing the Secretary's denial of disability insurance benefits in this case, however, the court's inquiry is limited to Lockhart's condition between December 7, 1979, the alleged onset date of disability, and June 30, 1980, when his insured status expired.

The medical record concerning Lockhart's condition in 1979–85 is a fairly lengthy one. On December 7, 1979, Lockhart, apparently in good health prior to that time, injured his back as previously described. (Tr. 92–93.) Following the injury, he experienced severe lower back pain, primarily on his right side, radiating down to the toes of his right foot, and up to his head. (Tr. 93–94, 98.) To treat his pain, Lockhart remained at home, largely in bed, took Tylenol, and gave himself massages as a form of accupressure he was taught by his grandfather. (Tr. 93–96, 307.) Plaintiff testified that the accupressure was effective in temporarily relieving his pain, or at least in shifting it to different locations in his body. (Tr. 96.)

Lockhart did not seek professional medical attention until he went to the Veterans Administration ("VA") Hospital in the Bronx, New York on August 7, 1981. (Tr. 111–12.) On that date, Lockhart went to the emergency room of the VA hospital complaining of lower back pain, pain in the back of his neck, and pain and numbness in his right leg. (Tr. 282.) A physician ordered a pelvic X-ray, which proved to be negative. The doctor also noted that plaintiff's straight leg raise test was negative bilaterally at 90 degrees, and there was no tenderness in the lumbar spine. Lockhart also had a full range of motion of the right and left lower extremities. His condition was diagnosed as "possible low back syndrome? radiculopathy." (Tr. 282.) No pain medication was prescribed. Lockhart was told to do exercises and report to the orthopedic clinic within one week. Plaintiff, however, did not report as directed. (Tr. 113–14.)

In May of 1982, Lockhart twice sought treatment at the Durham, North Carolina VA hospital. Both visits were for treatment of psoriasis, however, and not back pain. (Tr. 99, 222–23.) Plaintiff returned to the VA hospital in August, 1982, requesting a refill of the shampoo he was given for his psoriasis and complaining of blisters and cracked skin on his feet, as well as right hip pain radiating to his right foot. (Tr. 220.) The medical record of that visit indicates Plaintiff told VA personnel that his back was injured in 1979, but had improved with exercises. He stated that he still experienced back pain when sitting still and in cold climates. (Tr. 220.)

During the August visit, the VA physician noted Plaintiff had a rash on his feet, his cranial nerves II–XIV were intact, his strength was 5/5 in all muscle groups, and he had a normal tandem gait. Plaintiff's sensory and vibratory sensations were intact, as was his cerebellar functioning. His condition was assessed as low back pain of an unknown etiology and he was advised to continue exercises. (Tr. 220–21.)

In October, 1982, the Social Security Administration sent Lockhart to see Dr. Preston, an orthopedic surgeon. (Tr. 99–100.) Plaintiff complained of chronic low back pain exacerbated by cold weather and any activity. Plaintiff reported he could drive a car and was taking no medication. (Tr. 99.) During the examination, Lockhart was able to forward flex with his fingertips to two inches from the floor and his back flexed to 85 degrees. Trendelenburg's test was negative on each side, and Lockhart could perform a deep knee bend. Lockhart had no limp and could walk on toes and heels. There was no thigh or calf atrophy and no weakness in the lower limbs, but there did appear to be a mild hypesthesia in the anterior aspect of the right thigh. Straight leg raises were negative in a sitting and recumbent position to 75 degrees. There was a negative femoral stretch test on each side. His right knee jerk was trace and left knee jerk was 1+. Ankle jerks were 1+. (Tr. 224–25.)

Preston diagnosed Lockhart as suffering from "chronic low back pain, probably due to

degenerative disk disease," "[p]ain in right inguinal area, cause not clear," and "[r]educed right knee reflex." Based on an X-ray of Lockhart's lumbosacral spine, Preston also diagnosed a transitional L5 vertebrae but no other abnormalities. (Tr. 224–25.) Dr. Preston concluded that Lockhart was unable to work at that time, but he identified no particular duration for Plaintiff's work limitation. (Tr. 225.)

In January, 1983, Lockhart received treatment at the Lincoln Community Health Center in Durham ("Lincoln"). (Tr. 232.) Lockhart complained of pain in his back and right testicle. The physician examined Lockhart, noting no point tenderness of the lumbar spine, negative straight leg raises, no neurological atrophy, strength of 5/5 throughout, and symmetrical reflexes of 2+. He reported that Lockhart was "malingering." (Tr. 232.)

Lockhart returned to Lincoln in February 1983 again complaining of back pain radiating down into his right hip. During the physical examination of the back, there was a negative straight leg raise, no pain on flexion or extension of the back. (Tr. 231.) An X-ray of the lumbosacral spine on that date revealed "no evidence of fracture, bone destruction, arthritic change, or significant anomaly." (Tr. 235.) It was also noted that the intervertebral disc spaces were well maintained. (Tr. 235.)

On March 31, 1983, Lockhart again sought treatment at Lincoln, complaining of pain in his right testicle. Plaintiff told the medical personnel that the testicular pain was the result of the 1979 back injury. (Tr. 230.) He was given a urological examination, which proved to be negative, and was referred to an orthopedist for further examination to determine the source of the pain. (Tr. 230.)

On May 16, 1983, Lockhart was treated at Lincoln's orthopedic clinic. The examination revealed a negative straight leg raise, and full range of motion in Lockhart's hips, knees, and lumbar spine. (Tr. 228.) His muscle strength was 5/5. (Tr. 228.) Although there was tenderness over the iliac crest, Lockhart refused an injection to treat the pain. (Tr. 228.) Finally, the treating physician wrote that the etiology of the pain

was "probably functional." (Tr. 228.) It was not recommended that Lockhart return to the orthopedic clinic. Lincoln's records reflect that Lockhart failed to keep his scheduled appointment on February 21, 1984. (Tr. 227.)

As noted above, Lockhart returned to full-time substantial gainful activity in 1985 and continued until May 23, 1990. The Secretary previously determined that Lockhart was disabled beginning May 24, 1990. (Tr. 39.) The Secretary also concluded that Plaintiff was not disabled between the date of the back injury and the date he was last insured. (Tr. 38.) On review, the court concludes that the Secretary's finding is supported by substantial evidence in the record.

Based on the medical evidence discussed above, the ALJ concluded that "there is no evidence of an underlying physical or mental impairment that could reasonably be expected to cause the claimant's pain as shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, prior to the date last insured on June 30, 1980, for disability insurance benefits purposes." (Tr. 31.)

In reaching his decision, the ALJ held that Plaintiff had not proven that the elements of 20 C.F.R. § 404.1508 were satisfied. That regulation requires that a physical or mental impairment be established by "medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." 20 C.F.R. § 404.1508 (1993). The ALJ found that the record evidence failed to establish that this criterion was met because there was insufficient proof of an underlying physical impairment that could reasonably be expected to cause Plaintiff's pain. (Tr. 31.)

In order for Lockhart to receive disability benefits for the period in issue, he must demonstrate that he was disabled on or before the date he was last insured, June 30, 1980. Because Lockhart did not see a doctor between his injury in 1979 and the date he was last insured, there is no medical evidence presented for that period. Instead, Lockhart asks the court to infer that he was disabled during that period, based on his testimony

(and that of his girlfriend) about his condition as well as the medical evidence for subsequent years.

Plaintiff maintains that as a result of the incident in 1979 he has constantly been in pain from his head to his feet (Tr. 109–10), yet he sought no medical treatment for two years after the back trauma. He also testified that he was not taking any pain medication except occasional Tylenol during the intervening two years (Tr. 93–96) and was not prescribed any pain medicine when he did seek medical treatment in 1981. His testimony about his self-treatment during that period is that he massaged himself, bringing some degree of relief. (Tr. 93–96.)

Lockhart also testified that he engaged in some activities during the period between his injury and treatment, as well. While in New York, he went to the store and walked occasionally. (Tr. 94.) Plaintiff testified that after moving to Durham, he took walks to gain strength. (Tr. 104.) In reporting his condition to Dr. Preston, he stated that he drove a car, took no medications, and walked a half mile each day. (Tr. 224.) On disability income application forms filled out in 1982, Lockhart reported that he visited socially, cooked, and swept the floor. (Tr. 186.)

When Plaintiff sought treatment at the Durham VA hospital, the first two visits were for a psoriasis problem, not back pain.

When he was evaluated for back pain, the results did not support his claims of extreme debilitation, and one doctor labeled him a malingerer.

In 1985 Plaintiff began working despite the fact he says the pain was always with him, never abated, and he could not possibly have worked before 1984. At the hearing before the ALJ, Lockhart testified that from 1979 to 1984, his back condition would have prevented him from performing even a sedentary job. (Tr. 108.) He also testified that from 1985 there was never a time that he was without pain, however he had taken a series of jobs because "[i]t got to the point that people weren't believing me. . . . I guess you can imagine how people act around you when . . . they think you are lying." (Tr. 107.) Lockhart stated that he had left each

job after a short time because of back pain. (Tr. 107.)

Plaintiff relies heavily on the fact that in 1991 he was evaluated at Duke Medical Center, where Dr. Katz diagnosed a "long standing right L4,5 radiculopathy." (Tr. 263.) Plaintiff claims that this diagnosis is evidence that he was injured in 1979 and remained disabled thereafter. The court finds that the evidence taken as a whole, however, does not compel that conclusion.

Although Dr. Preston found a transitional L5 vertebra, the ALJ accurately noted that the vertebra had appeared normal in the prior X-ray taken at the Durham VA hospital, well after Plaintiff's insured status had expired. Further, the ALJ concluded that Preston's note that "[t]he patient has no ability to perform work at this time." referred solely to Plaintiff's condition on that date, and not his long-term ability to work. (Tr. 34.) That reading of Preston's note is supported by substantial evidence in the form of the subsequent medical records from Lincoln, as well as Plaintiff's testimony that he later resumed work.

In sum, substantial evidence supports the Secretary's decision to deny disability insurance income for the period in question.

**B. Supplemental Security Income**

■ Lockhart seeks supplemental security income for the period beginning August 6, 1982, the date he applied for benefits, and ending June 1, 1985, the date on which he returned to work. The ALJ determined that between those dates, Lockhart had "a severe impairment best described as chronic low back pain, but that he did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4." (Tr. 38.)

The ALJ considered Plaintiff's subjective complaints of pain under the criteria set out in Social Security Ruling 90–1p, *Evaluation of Pain and Other Symptoms,* and found that Plaintiff had experienced some lower back pain during the relevant time period, but that Plaintiff's description of the extent of his limitations as a result of the pain was not

credible. (Tr. 38.) Thus, although Plaintiff's impairment was "severe" in the sense that it prevented heavy lifting, the impairment did not meet or equal in severity the requirements of any of the Listing of Impairments and was not otherwise disabling.

The ALJ determined that between August 6, 1982 and June 1, 1985, Plaintiff's residual functional capacity was sufficient to perform medium work-related activities, which might involve frequent lifting and carrying of no more than 25 pounds or with the heaviest weight lifted no more than 50 pounds. (Tr. 34, 35, 39.) *See* 20 C.F.R. § 404.1567(c) (1993) (defining "medium work"). That limitation, the ALJ concluded, would not have interfered with Plaintiff's ability to perform his past relevant work as a painter during the period in question. (Tr. 39.) *See* 20 C.F.R. §§ 416.929 and 416.945 (1993). In reaching this conclusion, the ALJ properly considered Plaintiff's subjective evidence of his back pain and its disabling effects. *See Hyatt v. Sullivan,* 899 F.2d at 337.

The ALJ's conclusions are supported by substantial evidence in the record. The ALJ noted that Plaintiff's reports of his limitations between August 6, 1982 and June 1, 1985 were "inconsistent and contradictory." (Tr. 36.) Plaintiff testified that from 1979 to 1984, his back condition would have prevented him from performing even a sedentary job. (Tr. 108.) He also testified that beginning in 1985 there was never a time that he was without pain, but he had taken a series of jobs in spite of the pain they caused. (Tr. 110.) He stated in 1982 that he cooked and swept the floor, rode the bus, and visited socially. (Tr. 186.) Lockhart also told Dr. Preston in 1982 that he could drive a car, took no medications, and walked approximately a half mile each day. (Tr. 104, 224.)

The medical record also supports the ALJ's conclusion. Plaintiff's treating physicians at the VA hospital found no abnormalities in Plaintiff's X-ray and prescribed only exercises to treat his back pain. (Tr. 187, 224.) The doctors at Lincoln noted that etiology of the back pain was "probably functional" (Tr. 228) and described his complaints as "malingering." (Tr. 232.) Dr. Preston (not a treating physician) diagnosed a transitional L5 vertebra and found Plaintiff unable to work at that time. (Tr. 224–25.) The ALJ did not commit legal error in discounting Preston's opinion, however, because it was supported neither by the record of Preston's examination nor by other medical records, and it was contradicted by Plaintiff's testimony about his daily activities and by the findings of other physicians. *See generally* 20 C.F.R. § 404.1527 (evaluation of medical opinions). (Tr. 37.)

Accordingly, the Secretary's motion for judgment should be **GRANTED**.

### *CONCLUSION*

Based on the foregoing, **IT IS HEREBY ORDERED AND ADJUDGED** that Plaintiff's motion for judgment reversing the Secretary be **DENIED** and that the Secretary's motion for judgment be **GRANTED**. The Secretary's decision is **AFFIRMED**. A Judgment dismissing this action will be entered contemporaneously with this Memorandum Opinion.